UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ANDREA SHAPIRO, et al.,

                                         Plaintiffs,

                 -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

                                      Defendants.

------------------------------------------------------------------------x

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

06cv1836 (JSR)(HBP)

        Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendants submit that the following material facts are not in dispute.

**Administrative Charges filed by Plaintiffs**

        1.     Plaintiff Josefina Cruz "Cruz" filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), in March 2006.  See Ex. J [Cruz EEOC Charge].[1]

        2.     Plaintiff Anthony Ferraro ("Ferraro") jointly filed a charge of discrimination with the New York State Division on Human Rights ("SDHR") and the EEOC in March 2005.  A right-to-sue letter was issued by the EEOC on January 31, 2006.  See Ex. L [Ferraro EEOC complaint and Right-to-Sue Letter].

        3.     Plaintiff Elaine Jackson ("Jackson") filed a charge of discrimination with the EEOC on March 27, 2006.  See Ex. N [Jackson EEOC Charge; Ex. C [Jackson 6/8 Depo 20:4-22:4].

---

[1] The exhibits referred to herein are annexed to the Declaration of Assistant Corporation Counsel Cindy E. Switzer, dated July 26, 2007.

4.     Plaintiff Geraldine Whittington ("Whittington") jointly filed a charge of discrimination with the SDHR and the EEOC on June 18, 2005.  See Ex. P [Whittington SDHR Charge].

5.     The SDHR dismissed the charges filed by Whittington stating that there was "no probable cause" to believe that Whittington was subjected to discrimination.  See Ex. X [Whittington "No Probable Cause" Determination].

6.     Plaintiff Andrea Shapiro ("Shapiro") filed a charge of discrimination with the EEOC on December 7, 2005.  See Ex. S [Shapiro EEOC Charge].

7.     Plaintiff Diana Hrisinko ("Hrisinko") jointly filed a charge of discrimination with the SDHR and the EEOC on May 5, 2005.  See Ex. V [Hrisinko SDHR Charge].

8.     The SDHR dismissed the charges filed by Hrisinko stating that there was "no probable cause" to believe that Hrisinko was subjected to discrimination.  See Ex. W [Hrisinko "No Probable Cause" Determination];

9.     The EEOC wrote a letter advising that a search of their records did not reflect any charges of discrimination filed by Erica Weingast ("Weingast").  See Ex. K [EEOC Letter re: no Weingast charges].

10.     Diaz testified that he filed an administrative complaint of discrimination in March 2006. See Ex. F [Diaz Dep. 81:21-84:23].

11.     Plaintiff Gloria Chavez ("Chavez") testified that she filed a complaint of discrimination with the EEOC after she had already left the High School of Graphic Communication Arts ("GCA").  See Ex. B [Chavez Dep.  102:25-103:17].

**Facts Relating to Ferraro**

12.     Ferraro became a party to this action on June 15, 2006.  See Ex. M at ¶¶ 12(d)-(v) [June 15 Complaint].

**Facts Relating to Jackson**

13.     Jackson was employed as an assistant principal at the High School of Graphic Communication Arts ("GCA") from late August 2003 until January 2004.  At the end of the fall term, in late January 2004, principal Resnick asked Jackson for her resignation.  See Ex. O [Jackson 6/18 Depo 88:13-25.]

14.     Jackson testified that after leaving GCA in January 2004, except for writing a memo asserting that her paychecks were not transferred to the new school where she was teaching, she had no further communications with Mr. Resnick, or any administrator at GCA.  See Ex. O [Jackson 6/18 Depo 103:6-104:3].

**Facts Relating to Whittington**

15.     Whittington retired effective July 1, 2004.  See Ex. Q [Application for Termination Pay, Dep Ex. W]; Ex. D [Whittington 5-15 Dep. 90:6-18].

**Facts Relating to Diaz**

16.     Diaz testified that he decided to retire in June of 2005, after receiving a "U" rating on his annual performance evaluation for the 2004-2005 school year.  See Ex. F [Diaz Dep. 68:18-69:25].

17.     Diaz testified that none of his supervisors ever made any comments to him directed at his age.  See Ex. F [Diaz Dep. 74:1-9).

18.     Diaz testified that all of the teachers in the Spanish Department, including Ms. Vasquez, a teacher who was under 40 years old, were subjected to frequent classroom

observations by Assistant Principal Silverman and Principal. Resnick.  See Ex. F [Diaz Dep. 29:10-30:16; 71:1-23].

19.     Diaz testified that he never filed a complaint of discrimination with the BOE and never informed Ms. Silverman, Mr. Resnick, or any school administrator that he felt he was being subjected to discrimination.  See See Ex. F [Diaz Dep. 80: 7-11].

20.     When Diaz was asked at his deposition to explain the facts underlying his retaliation claim, he stated: "I don't know those acts."  See Ex. F [Diaz Dep. 83: 18-84:16].

**Facts Relating to Kington**

21.     Kington was not terminated or demoted; he was not subjected to any kind of discipline, warnings or reprimands; and he was not was given any unsatisfactory ratings.  See Ex. G [Kington Dep. 30:3-8; 32:15-33:20].

22.     Kington received several letters of commendation from Assistant Principal Matthew Guttman and Principal Resnick, and was rated satisfactory on his annual evaluations for the 2003-2004 and 2004-2005 school years.  See Ex. Z [Kington letters of commendation, and annual ratings for 2003-04 and 2004-2005 school year – Dep. Exs. B, C, D, E, F, J, King 94-95].

23.     In May 2005, Kington submitted an application to transfer to another school.  See Ex. G [Kington Dep. 49:13-25].

24.     Kington testified that he applied to transfer to Bayard Rustin High School for the Humanities because it has a great reputation in the City as a good high school, "probably one of the top ten," and that "GCA's reputation is "not necessarily in the top ten, difficult school, school with many students from the Dominican Republic."  See Ex. G [Kington Dep. 53:3-17.

25.     Kington testified that his duties at Bayard Rustin are essentially the same as they were at GCA.  See Ex. G [Kington Dep. at 70:8-13.

**Facts Relating to Shapiro**

26.     Shapiro retired on March 2, 2005.   See Ex. T [Shap Dep. Ex. C – retirement letter]; Ex. U [Shapiro May 30 Dep. 98:9-99:16].

27.     Shapiro was not terminated or demoted; she was not subject to any formal discipline; and she was not was given any unsatisfactory ratings.  See Ex. U [Shapiro 5/30 Dep. 85:86:1]

28.     Shapiro testified that she did not like Mr. Resnick's "comments . . . , the things that he wrote, the way he acted with people in the hallway when they spoke to him.  His demeanor."  Ex. U [Shapiro 5/30 Dep. 120: 15-23."  Ex. E [Shapiro 6/19 Dep. 49:10-18; 54:12-55:12]; Ex. AA [Dep. Ex. G Shap20-21].

29.     Shapiro alleges that she was not permitted to take her students to the theater; while another teacher who she refers to as "one of the sweet young innocents" was allowed to take a class to the theater.  See Ex. U [Shapiro 5/30 Dep. 5:124-19].  Shapiro also alleges that certain younger teachers had "better access to the principal."  See Ex. U [Shapiro 5/30 Dep. 139:22-140:8].

30.     Shapiro alleges that on one occasion Principal Resnick made a comment to her which she interpreted as being discriminatory.  Shapiro claims that at the conclusion of a grievance meeting in May 2004, Mr. Resnick said that if Shapiro didn't like the way he was doing things in the school, she should consider leaving.  See Ex. E [Shapiro 6/19 Dep. 52:7-24]; Ex. U [Shapiro Dep. 5/30 89:10-23].

31.     Shapiro also alleges that during this May 2004 meeting, Mr. Resnick asked Shapiro's age.  Shapiro claims to have responded that she is approximately his age.  See Ex. E [Shapiro 6/19 Dep. 50:8-53:5]; Ex. U [Shapiro Dep. 5/30 90:10-17].

**Facts Relating to Chavez and Cruz**

32.     Chavez alleges that Principal Resnick yelled at her and threatened disciplinary action; falsely charged her with disciplinary lapses; and gave her an unsatisfactory rating.  See Ex. A [Complaint, ¶18].

33.     Cruz alleges that she was given a difficult schedule of classes, was subject to frequent informal and formal classroom observations, and given "U" ratings.  See Ex. A [Complaint, ¶11].

34.     Chavez testified that she received an unsatisfactory rating on her performance evaluation for the 2004-2005 school year and was served with disciplinary "3020a" charges because she had failed to administer the oral portion of the Spanish portion of the Regents Exam.  See Ex. B [Chavez Dep. 93:24-18]; Ex. CC [Resnick Letter, Dep. Ex. C].

35.     Chavez and Cruz were reassigned to the Manhattan Regional Operation Center ("ROC").  However, they did not lose any pay or benefits as a result.  See Ex. DD [AWW1014]; Ex. B [Chavez Dep. 107:8-24].

36.     All the teachers in the Foreign Language Department at GCA who failed to administer the oral portion of the January 2006 Regents Exam, were given unsatisfactory performance evaluations, served with disciplinary charges, and were reassigned to the ROC.  See Ex. B [Chavez Dep. 82:3-9; 57:11-58:12].  This includes a teacher who is 34 years old .  Id..

37.     Chavez alleges that Principal Resnick and Assistant Principal made comments to her which she considered to be evidence of age discrimination.  Chavez claims that on one occasion, while riding the elevator, she was holding a cup of tea and Mr. Resnick said to her, "Oh, you drink tea:  You should drink coffee to perk up or be more energetic."  See Ex. B [Chavez Dep., 97:18-23].

38.     Chavez also testified that Mr. Resnick and Ms. Silverman emphasized "new" and "modern" teaching methods.  For example, Ms. Silverman recommended that Chavez use more technology in her classroom, criticized Chavez's "traditional" teaching style, and implied that Chavez should "update" her teaching style.  See Ex. B [Chavez Dep., 97:24-100:19].

**Facts Relating to Hrisinko**

39.     Hrisinko was "excessed" effective February 1, 2005.  See Ex. EE [Jan. 24 Letter –Dep Ex. K].

40.     According to BOE officials, Hrisinko was excessed from her position as a provisional teacher, teaching under a Cold Type Composition license, due to staffing reductions at GCA, which were the result of a reduced student population.  See Ex. EE [Jan. 24 Letter –Dep Ex. K]; Ex. FF [BOE Position Statement Hrisinko].

41.     The letter informing Hrisinko that she was being excessed, instructed her to continue to report to GCA until being notified of her reassignment. See Ex. EE [Jan. 24 Letter –Dep Ex. K]; Ex. FF [BOE Position Statement Hrisinko].

42.     Hrisinko reported to GCA and was assigned to work as a substitute covering classes for several days before being reassigned to another school. Ex. H [Hrisinko 5/30 Dep. 26: 18-28:15].

43.     In early February 2005, Hrisinko was assigned to a new school.  Hrisinko testified that she prefers the new school over GCA.  Ex. H [Hrisinko 5/30 Dep. 26: 18-28:15]; Ex. I [Hrisinko 6/25 Dep. 28: 18-29:4].

44.     Hrisinko did not lose any salary or benefits as a result of being excessed. See Ex. H [Hris 5/30 Dep. 16:3-14].

45.     Hrisinko also alleges that during the Fall 2004 term, she was subjected to "harassment" by Mr. Resnick frequently coming into her classroom unannounced and looking around.  Ex. H [Hrisinko 5/30 Dep. 31:10-35:16].

46.     Hrisinko also alleges that on various occasions she "lost her program" which meant that the program of classes she had been assigned to teach was changed, and she was assigned to work in different classrooms.  Ex. H [Hrisinko 5/30 Dep., 17:43-45:2].

47.     Hrisinko contacted her union and a grievance was filed on her behalf challenging the decision to excess Hrisinko.  See Ex. GG [Step 2 Griev – Dep. Ex. N].

48.     A grievance hearing was scheduled to take place in June 2005, but on the date of the hearing, Hrisinko dropped the grievance because she decided that she would prefer to stay at the new school to which she had been assigned, rather than returning to GCA.  See Ex. I [Hrisinko 6/25 Dep. 26:10-29:4].

**Fact Relating to Friedline**

49.     Friedline alleges that she was discriminated against based on her age because she was not selected to write a new graphic arts curriculum, she was not selected to be a mentor to a student in the SVA (Student Vocational Assistant) program, and she was given an unsatisfactory rating for the 2004-2005 school year.  See Ex. A [Complaint, ¶10].

50.     According to BOE Officials, the teachers who were selected for the curriculum writing position were selected because they held the appropriate license, and had recent industry experience.  See Ex. HH [BOE Position Statement Friedline]

51.     Friedline filed a grievance relating to her non-selection for the curriculum writing position, which was denied.  See Ex. HH [BOE Position Statement Friedline]

52.     The letter denying the grievance explains that in addition to not having the proper license, Friedline was not selected because she already held a per session position as Advisor to the Honors Society, while the two teachers who were chosen for this position did not have any other per session jobs.  See Ex. HH [BOE Position Statement Friedline]

53.     Friedline filed a grievance relating to her non-selection for the SVA mentor position, which was denied.  See Ex. II [Friedline Grievance Decision].

54.     The Step II Grievance Decision states: "The SVA committee properly selected among qualified candidates a teacher who served in a position under the appropriate license that was required for the mentor position.  In contrast, the Grievant serves under a different appointment and license."  See Ex. II [Friedline Grievance Decision].

55.     Friedline was given a unsatisfactory rating pending the outcome of an investigation by the Office of Special Investigations ("OSI"). See Ex. A [Complaint, ¶10(k)]

56.     OSI completed its investigation, and determined that the allegations of employee misconduct by Friedline were "substantiated."  See Ex. JJ [OSI Report].

Dated:      New York, New York
            July 26, 2007

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-117
                              New York, New York 10007-2601
                              (212) 788-8688

                    By:     **ECF**:                    /s/
                                Cindy E. Switzer (CS1112)
                                Assistant Corporation Counsel

06cv1836 (JSR)(HBP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA SHAPIRO, et al.,

                                                    Plaintiffs,

                              -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
et al.,

                                                    Defendants.

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

### MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-117
New York, New York  10007-2601

Of  Counsel:  Cindy E. Switzer
Tel.:  (212) 788-0956

NYCLIS No.: 06LE000102

*Service of which is hereby acknowledged:*

........................................., N.Y.  Dated: ...........................................

Signed:  ...............................................................................................

Print Name: .........................................................................................

Attorney for: ........................................................................................